HARRIS, J.,
delivered the opinion of the Court.
William .Greer, the defendant in error, brought this action of trover to recover the value of a large amount of promissory notes, gold, &c., -which he alleged the plaintiff in error, Jordan, had converted to his own use.
There was a plea of not guilty; and verdict and judgment were for the defendant in error, for the sum of sixteen hundred and seventy-one dollars and thirty-seven cents; a new trial was refused, and the defendant has appealed in error to this Court.
From the bill of exceptions, it appears that Mrs. Greer, the wife of the plaintiff below, considered herself maltreated by her husband, and applied to an attorney to prepare for her a bill for divorce and alimony. That in drafting the bill for the purpose of showing the amount of alimony the complainant would be entitled to, and securing the same, the attorney set out specifically the property, both real and personal, of which said William Greer was possessed, and its probable value, and prayed that the same might be attached. In making out this statement in the bill, he inquired the amount of cash and cash notes Greer had on hand, and Mrs. Greer drew out an old pocket-book, containing the notes. The attorney took the notes out of the pocket-book, and with the assistance of Mrs. Greer and the defendant, Jordan, who was present, and whose wife is a neiee of Mrs. Greer, he proceeded to ascertain the amount of the notes; this being done, he replaced them in the pocket-book, and handed it to Mrs. Greer, and told her to replace it where she got it from. She said she would do so. She also said, that she could have taken gold. She was then advised by her attorney, the witness, and Jordan, *167 not to touch it. “After the amount of notes was put in the hill, Jordan asked the attorney--if he should put down their amount? and he replied that he had better do so, and then there could be no forgetting.” Jordan then wrote in a memorandum book, a list of the notes and their amounts. “ The object in examining these notes was to state their amount in the bill.” It also appears, that when the sheriff went" t.o . levy the attachment, Greer searched for his money and notes, and could not find them. It was also proved that Greer sent his friends to make overtures to his wife for a reconciliation, and that she referred them to one Harris, her brother-in-law, and to the defendant, Jordan.
In their conversation with Jordan,’ one of them remarked that Greer said his wife had carried off $4000 worth of notes; Jordan drew his memorandum book, and replied, “he guesses, well, if interest was added, it would make that amount.”
In the course of a few weeks a. reconciliation took place between Greer and wife, and she dismissed her bill. She then went to the house of defendant, and brought her clothes and the sum of $460 in gold. The proof does not show, however, that the" defendant ever knew the gold was there. Greer and wife soon separated again, and another bill was filed by Mrs. Greer, for divorce and alimony, and during, a heated litigation in this suit, the pocket-book and notes were thrown over in the yard of an old gentleman in the neighborhood and were found the next morning in a ruinous condition, from exposure to the weather.
Both parties charged each other with having had the notes, and adopting this course to get rid of them.
*168 These are substantially all the material facts in the record, and the question is, was this recovery upon these facts, warranted by law? The solution of this question depends upon whether the defendant was guilty of a conversion of the property in controversy.
Mr. Ghitty in the 1 vol. of his Treatise on Pleading, at page 163, lays down the different “instances of conversion,” they may be either, 1st, by wrongfully taking a personal chattle; 2d, by some other illegal assumption of ownership, or by illegally using or misusing goods; or 3d, by a wrongful conversion.” Mr. Gréenleaf, in his work on Evident vol. 2, sec. 642, says, that “a conversion in the sense of the law of trover, consists either in the appropriation of the thing to the party’s own use and beneficial enjoyment, or, in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff’s right, or. in withholding the possession from the plaintiff, under a claim of title, inconsistent with his own.” “ Every unlawful talcing with intent to apply the goods to the use of the taker, or of some other person than the owner, or having the effect of destroying or altering their nature, is a conversion.” To constitute a conversion, the taking, the assumption of ownership, or the detention of the goods must not only be without the consent and against the will of the owner, but inconsistent with, and in hostility to his right.
Then, to apply these principles to the case before us, was the defendant guilty of a conversion of- the plaintiff/s goods? We think not. There is nothing in the proof to show that the defendant was guilty of any interference with the notes, further than was necessary to *169 take a list of them to he used in the hill they were then preparing, which was a legal purpose.
The temporary possession of the notes for this purpose, was not designed to deprive the plaintiff of them;, hut was only intended to enable the wife to institute a legal proceeding, by which she sought to subject them' as the property of the husband to her right of alimony. This she unquestionably had a right to do, as had also? those who were assisting her in asserting that right. That nothing more was intended, is manifest from the fact that she was advised to return the notes -to the place where she took them from, which 'she promised to do.
As to the gold, the proof shows that during a temporary reconciliation of the parties, Mrs. Greer went to the house of the defendant and brought away, a large bundle of her clothes, and with them $460 in gold, but the proof does not show that the defendant even knew that the money was there, much less that he used it, or exercised acts of ownership over it, inconsistent with the right of the plaintiff.
But if he had known that she had it, and took no control or dominion over it himself, but merely permitted her to remain at his house, with it in her possession, this would not be a conversion by the defendant. The Circuit Judge having instructed the jury differently, the judgment must be reversed, and the cause remanded for a new trial.